# APPEAL NO. 25-2566

## UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

WYATT BURY, LLC; BALLPARK INVESTMENTS, LLC, doing business as Hope & Healing Counseling; WYATT BURY; PAMELA EISENREICH,

Plaintiffs-Appellants,

STATE OF MISSOURI ex rel. MISSOURI ATTORNEY GENERAL CATHERINE L. HANAWAY,

Plaintiff,

v.

CITY OF KANSAS CITY, MISSOURI; JACKSON COUNTY, MISSOURI

Defendants-Appellees.

On Appeal from the United States District Court
For the Western District of Missouri
Case No. 4:25-cv-00084-RK

## APPELLEES' BRIEF

| OFFICE OF THE CITY ATTORNEY | OFFICE OF THE COUNTY COUNSELOR |
|---|---|
| Tara M. Kelly     #64624 | D. Ryan Taylor              #63284<br>Theresa E. Bullington     #72337 |
| 2800 City Hall, 414 E. 12th Street<br>Kansas City, Missouri 64106<br>Telephone: (816) 513-3117<br>Facsimile: (816) 513-3133<br>Email: tara.kelly@kcmo.org | 415 E. 12th Street, Suite 200<br>Kansas City, Missouri 64106<br>Telephone: (816) 881-3656<br>Facsimile: (816) 881-3398<br>Email: rtaylor@jacksongov.org |
| ATTORNEY FOR APPELLEE<br>CITY OF KANSAS CITY, MISSOURI | ATTORNEYS FOR APPELLEE<br>JACKSON COUNTY, MISSOURI |

# TABLE OF CONTENTS

Table of Contents ............................................................... 2

Table of Authorities ........................................................... 3

Summary of the Argument ................................................. 6

Argument ........................................................................... 7

Conclusion ....................................................................... 26

Certificate of Compliance .............................................. 27

Certificate of Service ..................................................... 27

TABLE OF AUTHORITIES

CASES

303 Creative LLC v. Elenis, 6 F.4th 1160 (10th Cir. 2021) ......................22

Capital Assoc. Indus., Inc. v. Stein, 922 F.3d 198 (4th Cir. 2019)............16

CEZ Prior, LLC v. 755 N Prior Ave. LLC, 126 F.4th 1353 (8th Cir. 2025) 24

Chiles v. Salazar, 116 F.4th 1178 (10th Cir. 2024)......................11, 15, 24

Christian Legal Soc. Chapter of the Univ. of Cal., Hastings Coll. of the L. v.
    Martinez, 561 U.S. 661 (2010).................................................26

Collins v. Texas, 223 U.S. 288 (1912)......................................25

Crane v. Johnson, 242 U.S. 339 (1917).....................................25

Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109 (8th Cir. 1981) .........24

Del Castillo v. Sec'y, Fla. Dep't of Health, 26 F.4th 1214 (11th Cir. 2022)
    .................................................................13, 16

Dobbs v. Jackson Women's Health Org., 597 U.S. 215 (2022) .......9, 17, 24

Doe v. Parson, 960 F.3d 1115 (8th Cir. 2020). ..........................24

Emilee Carpenter, LLC v. James, 107 F.4th 92 (2d Cir. 2024)............19, 22

EMW Women's Surgical Ctr., P.S.C. v. Beshear, 920 F.3d 421 (6th Cir.
    2019) ...........................................................16

FCC v. Beach Commc'ns, Inc., 508 U.S. 307 (1993)................................24

Greater Phila. Chamber of Com. v. City of Phila., 949 F.3d 116 (3rd Cir.
    2020) ...........................................................16

Heller v. Doe, 509 U.S. 312 (1993)..........................................17

Hines v. Quillivan, 982 F.3d 266 (5th Cir. 2020) ......................16

Holder v. Humanitarian Law Project, 561 U.S. 1 (2010) ..........................11

Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos., 515 U.S. 557 (1995)................................................................................18, 22

Masterpiece Cakeshop v. Colorado Civil Rights Commission, 584 U.S. 617, 631 (US 2018). ................................................................................18

Nat'l Inst. of Fam. & Life Advocs. v. Becerra, 585 U.S. 755 (2018)... passim

New York v. Ferber, 458 U.S. 747 (1982)................................................25

Ohralik v. Ohio State Bar Ass'n, 436 U.S. 447 (1978) ..............................10

Otto v City of Boca Raton, 981 F.3d 854 (11th Cir. 2020).............14, 16, 17

Pickup v. Brown, 740 F.3d 1208 (9th Cir. 2014).....................................14

Planned Parenthood of Southeastern Pa. v. Casey, 505 U.S. 833 (1992) ............................................................................................... passim

PruneYard Shopping Center v. Robins, 447 U.S. 74 (1980).....................21

R.A.V. v. City of St. Paul, 505 U.S. 377 (1992) ......................................14

Rosenberger v. Rector and Visitors of the Univ. of Va., 515 U.S. 819 (1995) ...................................................................................................26

Rumsfeld v. Forum for Acad. and Inst. Rights, Inc., 547 U.S. 47 (2006) ............................................................................................... passim

Sable Commc'ns of Cal., Inc. v. FCC, 492 U.S. 115 (1989).......................24

Sorrell v. IMS Health Inc., 564 U.S. 552 (2011)................................19, 26

Telescope Media Group v. Lucero, 936 F.3d 740 (8th Cir. 2019). ......19, 22

Tingley v. Ferguson, 47 F.4th 1055 (9th Cir. 2022) ...........................14, 15

Vizaline, L.L.C. v. Tracy, 949 F.3d 927 (5th Cir. 2020) ...........................16

Watson v. Maryland, 218 U.S. 173 (1910) ...............................................25

Whalen v. Roe, 429 U.S. 589, 603 (1977) ...................................................10

Wooley v. Maynard, 430 U.S. 705 (1977)...................................................10

STATUTES
K.C. § 38-113(a).................................................................................18

SUMMARY OF THE ARGUMENT

I. The Counseling Ordinances being challenged are regulations of professional conduct and only incidentally implicate speech, meaning they are subject to lower constitutional scrutiny. The Ordinances are able to pass the appropriate level of scrutiny and Appellants' cannot prove the facts to entitle them to a preliminary injunction.

II. The Public Accommodation Ordinance is a regulation on professional conduct and a limitation on discriminatory conduct by professionals. This does not implicate free speech concerns and it passes the required level of scrutiny.

III. The Appellants are not likely to win on the merits of their arguments and thus have failed to meet the preliminary injunction standards. The denial of the preliminary injunction by the district court was appropriate.

ARGUMENT

## I. *The Counseling Ordinances are regulations on conduct, not speech.*

States have set up regulatory mechanisms to protect children in a variety of ways, from creating entire departments for child welfare to mandatory reporting programs, the latter of which requires certain professionals to report the abuse or suspected abuse of a minor. It would border on the absurd for a teacher subject to these requirements to claim that they shouldn't be required to report child abuse because they personally agree with corporal punishment for children and the government cannot make them speak if they wish not to. That, however, is the basic argument of Appellants here, except that, even more alarmingly, they are also asking to be allowed to be the ones perpetrating the harm on minors.

Appellants' claim the Counseling Ordinances[1] infringe on their First Amendment right to freedom of speech, asserting that these Counseling Ordinances limit their desired therapeutic practice. However, the restricted therapy is conduct, not speech, which is regulated by the Counseling Ordinances to protect minors from known dangers and harms. This does not infringe on Appellants' right to free speech. The Counseling Ordinances are regulations of professional conduct that have been tailored to address only therapeutic interventions known to seriously harm minors.

---

[1] Appellants challenge Kansas City Code § 50-234 and Jackson County Ordinance § 5575.

7

As regulation of professional conduct, even ones that incidentally include speech, the Counseling Ordinances satisfy the minimal level of scrutiny required. Because the Counseling Ordinances concern licensed and registered mental health providers, Appellants' free speech claims are controlled by *NIFLA*, which holds that "States may regulate professional conduct, even though that conduct incidentally involves speech." *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755, 768 (2018).

The Supreme Court considered the issue of professional conduct in *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833 (1992). In *Casey*, the petitioners brough a First Amendment free speech challenge to a Pennsylvania law requiring physicians to obtain informed consent with specific required disclosures and language from abortion patients. *Id.* at 844. The Court upheld the informed consent statute and explained that the compelled speech from medical professionals was not a First Amendment infringement because it regulated speech "only as part of the practice of medicine, subject to reasonable licensing and regulation by the State." *Id.* at 884 (overruled on other grounds by *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 231 (2022)).[2] The fact that the law "express[ed] a preference for childbirth over abortion," and compelled physicians' speech in a manner reflecting that preference, made no difference. *Id.* at 883.

The Supreme Court affirmed and reinforced *Casey*'s First Amendment

---

[2]  Appellants do not explain how the Supreme Court can compel speech in *Casey* by labeling it as professional conduct yet argue that the District Court was incorrect in finding that providing therapy was professional conduct.

holding in *NIFLA*. *NIFLA* held that there is not a category of "professional speech" that is subject to diminution of First Amendment protection. *Id.* at 767-68. While acknowledging that "[s]peech is not unprotected merely because it is uttered by 'professionals[,]'" it also affirmed that the government may regulate speech that occurs "as part of the practice of medicine" without triggering the strict scrutiny that would usually apply to speech. *Id.* at 770 (citation omitted). The same analysis can be applied here, where the Counseling Ordinances prohibit a certain <u>medical practice</u> which has been overwhelmingly found to be harmful to the minors upon which it is performed. The government has a mandatory duty to protect its citizens, and in particular vulnerable populations, such as minors.

This distinction between expressive speech and professional conduct is also found outside of the medical context. In *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447 (1978), the state bar disciplined a lawyer for soliciting a client in person. *Id.* at 451-53. The lawyer challenged his discipline on First Amendment grounds, arguing that his activity consisted only of words and not conduct. *Id.* at 453. The Supreme Court rejected this argument, holding that unlike traditionally protected speech, the attorney's action in soliciting a client was professional conduct that fell under state regulatory authority. *Id.* at 459-60. It noted the "common-sense distinction" between the lawyer's speech which was "traditionally subject to government regulation" and "other varieties of speech." *Id.* at 455-56.

Laws governing professional conduct do not implicate the First Amendment simply because they incidentally encompass speech;

9

regulations of medical care, in particular, may permissibly include speech that is part of the practice of medicine. As such, these regulations are not analyzed under traditional content- and speaker-based First Amendment scrutiny. They typically are limited to a certain class of speakers—ones whose professional conduct is already regulated by the state—and to specific topics relating to that particular profession. *See NIFLA*, 585 U.S. at 770 ("Indeed, the requirement that a doctor obtain informed consent to perform an operation is firmly entrenched in American tort law." (internal quote omitted)); *Casey*, 505 U.S. at 884 ("To be sure, the physician's First Amendment rights not to speak are implicated, but only as part of the practice of medicine, subject to reasonable licensing and regulation by the State." (citing *Wooley v. Maynard*, 430 U.S. 705, 714 (1977), *Whalen v. Roe*, 429 U.S. 589, 603 (1977))). All informed consent laws, for example, are both speaker- and content-based: they compel one type of speaker, health providers, to communicate content-based speech and messages to their patients about their treatment.

Appellants mischaracterize the issue by contending that conversion therapy is like speech providing material support to terrorism and should be immune from regulation.[3] The Counseling Ordinances do not prevent

---

3 Appellants reference to *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010), is as unavailing on the merits as it is as an analogy. Br. at 23. In *Holder*, the Supreme Court considered a free speech challenge to a law prohibiting the provision of material support to terrorist organizations. 561 U.S. at 7-8. The Supreme Court held that the law "regulates speech" and, therefore, was subject to a "more demanding standard" of scrutiny. *Id.* at 27-28. Here, however, the issue is not one of "communicating a message," *id.* at 28,

Appellants from speaking on the value of conversion therapy, their beliefs about sexual orientation, gender identity, sexual behavior, or any other topic – whether controversial or commonplace – either in therapy or in the public square. Although therapy of all types involves more words than is colloquially viewed as medical treatment, the quantity of words used does not transform mental health treatment from conduct into protected, expressive speech. Medical treatment is what is being regulated here.

The prohibition on conversion therapy is more akin to the military recruitment at issue in *Rumsfeld v. Forum for Acad. and Inst. Rights, Inc. ("FAIR II")*. There, the Supreme Court explained that it "extended First Amendment protection only to conduct that is *inherently expressive*." 547 U.S. 47, 66 (2006) (emphasis added). In doing so, the Court upheld the Solomon Amendment, which conditions federal higher education funding on allowing military recruiters access to campuses on the same basis as non-military recruiters. The Court held that the statute did not implicate the First Amendment, even when the schools disagreed with military action, because the "actions were expressive only because the law schools accompanied their conduct with speech explaining it." *Id.* at 51, 66. Like the conduct at issue in *FAIR II*, medical treatment is not "inherently expressive," and the Counseling Ordinances do not prohibit expressive speech.

---

but practicing a <u>*treatment*</u> that attempts to (or purports to) change an individual's sexual orientation or gender identity. *See, e.g., Chiles v. Salazar*, 116 F.4th 1178, 1212-13 (10th Cir. 2024) (holding that *Holder* is "not instructive because [it does] not even deal with regulations of professional conduct that incidentally involve speech.").

Several Circuits have specifically addressed medical and mental health professional conduct regulations and their impact on speech under *NIFLA*. The Eleventh Circuit recently held that a person providing nutrition advice engages in more than just speech, and a "statute that governs the practice of an occupation is not unconstitutional as an abridgement of the right to free speech, so long as any inhibition of that right is merely the incidental effect of observing an otherwise legitimate regulation." *Del Castillo v. Sec'y, Fla. Dep't of Health*, 26 F.4th 1214, 1225 (11th Cir. 2022). "Assessing a client's nutrition needs, conducting nutrition research, developing a nutrition care system, and integrating information from a nutrition assessment are not speech. They are 'occupational conduct'; they're what a dietician or nutritionist does as part of her professional services." *Id.* at 1225-26. The court held that the burden on the nutritionist's professional speech was "an incidental part of regulating the profession's conduct." *Id.* at 1226. Similarly, assessing a client's counseling needs, diagnosing a client, developing a therapy plan, and providing therapeutic treatment are not speech. This is professional conduct.

And most of the Circuits – but for the Eleventh Circuit in *Otto v. City of Boca Raton,* 981 F.3d 854 (11th Cir. 2020)[4] where the court omitted the crucial first step – have likewise upheld laws that regulate conversion therapy. In *Tingley v. Ferguson*, the Ninth Circuit recently applied *NIFLA's* professional conduct test to a Washington law prohibiting the provision of conversion therapy and upholding it. 47 F.4th 1055, 1077-78 (9th Cir. 2022). The court explained that "[m]ost medical treatments require speech . . . but a state may still ban a particular treatment it finds harmful; otherwise any prohibition of a medical treatment would implicate the First Amendment and unduly limit the states' 'power to regulate licensed professions.'" *Id.* at 1073 (quoting *Pickup v. Brown*, 740 F.3d 1208 (9th Cir. 2014) (abrogated on other grounds by *NIFLA*, 585 U.S. at 767).

Following the path laid out by *NIFLA*, *Tingley* held that Washington's prohibition on conversion therapy was a reasonable regulation of professional conduct that incidentally involved speech. *Id.* at 1073-79. The court held that the regulation intended "to protect the 'physical and psychological well-being" of minors, which is "without a doubt a legitimate state interest." *Id.* at 1078 (internal citation and quotation omitted). This was particularly true because "Washington legislators relied on the fact that

---

[4] Even *Otto*, although it did not agree that conversion therapy ordinances regulate conduct, confirmed that "there is no doubt that 'States may regulate professional conduct,'" 981 F.3d at 865 (quoting *NIFLA*, 585 U.S. at 768), because "'words in some circumstances violate laws directed not against speech but against conduct.' *Id.* (quoting *R.A.V. v. City of St. Paul*, 505 U.S. 377, 389 (1992)).

'[e]very major medical and mental health organization' has uniformly rejected aversive and non-aversive conversion therapy as unsafe and inefficacious." *Id.* at 1078.

Similarly, the Tenth Circuit in *Chiles v. Salazar*, 116 F.4th 1178 (10th Cir. 2024), held that talk therapy was a medical treatment that could be regulated by the State. *Id.* at 1204-10. In doing so, the court recognized that talk therapy is "a therapeutic modality – carried out through use of verbal language – by a licensed practitioner authorized by Colorado to care for patients." *Id.* at 1208. This leads to the conclusion that Colorado's law "does not regulate expression. It is the *practice* of conversion therapy – not the *discussion of the subject* by the mental health provider – that is a prohibited activity under" the law at issue. *Id.* (emphases supplied).[5] In that way, a Colorado provider may still

> share with her minor clients her own views on conversion therapy, sexual orientation, and gender identity. She may exercise her First Amendment right to criticize Colorado for restricting her ability to administer conversion therapy. She may refer her minor clients to service providers outside of the regulatory ambit who can legally engage in efforts to change a client's sexual orientation or gender identity. . . . And once a minor client reaches the age of majority, [a provider] may provide conversion therapy to that client.

*Id.* at 1209 (internal citation omitted).

Almost universally, any Circuit that has considered *NIFLA*'s analysis

---

[5] The court went on to reject the notion that talk therapy "is not really medical treatment." *Chiles*, 116 F.4th at 1210-11. "Talk therapy is no less a medical treatment . . . simply because it is 'implemented through speech rather than through scalpel.'" *Id.* at 1211 (quoting *Tingley*, 47 F.4th at 1064).

of professional conduct regulations that incidentally involve speech has started their analysis by asking whether the regulation is one governing the conduct of professionals. *See Greater Phila. Chamber of Com. v. City of Phila.*, 949 F.3d 116, 140 (3rd Cir. 2020) (rational basis applied to a professional conduct regulation prohibiting reliance on wage history in determining salary); *Vizaline, L.L.C. v. Tracy*, 949 F.3d 927, 933 (5th Cir. 2020) (occupational licensing requirements for surveyors are not immune from First Amendment scrutiny but turn on "the traditional taxonomy that 'draw[s] the line between speech and conduct'"); *Hines v. Quillivan*, 982 F.3d 266, 272 (5th Cir. 2020) (a regulation on telehealth use by veterinarians turns on whether it "restricts speech only incidentally to their regulation of non-expressive conduct," which was a question for the trial court); *Capital Assoc. Indus., Inc. v. Stein*, 922 F.3d 198, 207 (4th Cir. 2019) (a ban on the practice of law by corporations was "a regulation of professional conduct that incidentally burdens speech"); *EMW Women's Surgical Ctr., P.S.C. v. Beshear*, 920 F.3d 421, 429 (6th Cir. 2019) ("no heightened First Amendment scrutiny applies because, as *NIFLA* instructed, an informed-consent law like the *Casey* statute is a regulation of professional conduct that only incidentally burdens professional speech.").

The Eleventh Circuit, as noted above, previously reached a different conclusion in *Otto* than it did in *Del Castillo*, regarding mental health therapeutic treatment when it <u>skipped</u> the important first question: whether the municipal ordinance prohibiting conversion therapy treatment regulated professional conduct. *See Otto v. City of Boca Raton*, 981 F.3d 854, 861, 865

(11th Cir. 2020) (striking a conversion therapy prohibition because "[w]hat the governments call a 'medical procedure' consists – entirely – of words."). Instead, the court decided "the first question we need to consider is whether the ordinances are content-based regulations." *Id.* Finding the ordinances were content-based, the court applied strict scrutiny. *Id.* But the professional conduct analysis should not be tossed aside as was done in *Otto*.

*Otto* misunderstands the importance of *NIFLA's* holding; for if states may not prohibit or mandate certain types of professional conduct that include more than "some speech at their margins," then regulations compelling healthcare workers to provide content-specific information on family planning to patients, such as in *Casey*, would also need to withstand strict scrutiny. *Id.* at 865. However, *NIFLA* closed that door when it highlighted the informed consent requirements in *Casey* as an example of the type of professional conduct regulation that should be upheld under less scrutiny. 585 U.S. at 769-70; *see also Dobbs*, 597 U.S. at 301 ("A law regulating abortion, like other health and welfare laws, is entitled to a 'strong presumption of validity.' It must be sustained if there is a rational basis on which the legislature could have thought that it would serve legitimate state interests." (citing *Heller v. Doe*, 509 U.S. 312, 319 (1993))).

II. *The Public Accommodation Ordinance is a regulation on professional conduct and discriminatory service practices and does not restrict speech.*

As an initial matter, it is important to highlight what is and is not included in this appeal. The District Court granted the preliminary

injunction with respect to the use of preferred pronouns and the City has not appealed that preliminary injunction. That issue, then, need not be considered by the Court. The issue remaining for this Court is whether the Appellants must provide medical treatment regardless of sexual orientation or gender identity of the client.

The City's Public Accommodation Ordinance, Section 38-113, does not infringe on Appellants' First Amendment rights because it regulates conduct and neither compels nor restricts Appellants' speech. Public accommodation laws do not generally violate the First or Fourteenth Amendments. *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 572 (1995) (stating that public accommodation laws are "well within the State's usual power to enact when a legislature has reason to believe that a given group is the target of discrimination"). "[I]t is a generally rule that such objections [to same-sex marriage] do not allow business owners and other actors in the economy and in society to deny protected persons equal access to goods and services under a neutral and generally applicable public accommodations law." *Masterpiece Cakeshop v. Colorado Civil Rights Commission,* 584 U.S. 617, 631 (US 2018).

The City's Public Accommodation Ordinance merely prohibits Appellants from refusing, withholding from, or denying their services to individuals due to the individual's known or perceived sexual orientation, gender identity, or other protected characteristics, or from advertising that specific people and their patronage is unwelcome. K.C. § 38-113(a). The Ordinance "neither limits what [plaintiffs] may say nor requires them to say

anything. . . but regulates conduct, not speech. It affects what [plaintiffs] must *do* . . . afford equal access . . . not what they may or may not *say*." *FAIR II,* 547 U.S. at 60.

"States may regulate professional conduct, even though that conduct incidentally involves speech." *NIFLA,* 585 U.S. at 768. "[R]estrictions on protected expression are distinct from restrictions on economic activity or, more generally, on nonexpressive conduct." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011). "[C]onduct cannot be labeled expressive activity simply 'whenever the person engaging in the conduct intends thereby to express an idea.'" *Emilee Carpenter, LLC v. James*, 107 F.4th 92, 103 (2d Cir. 2024) (quoting *FAIR II*, 547 U.S. at 65-66). Appellants' counseling services are not "pure speech" or "expressive activity;" the services are the provision of medical care. While Appellants' argue that their counseling is their speech, it is not enough for the service at issue to merely involve a medium of expression. *Emilee Carpenter*, 107 F.4th at 104. "[A] public-accommodation law requiring a restaurant to serve people of all races, genders, and sexual orientations will have the incidental effect of requiring servers to speak to customers to take their order." *Telescope Media Group v. Lucero*, 936 F.3d 740, 757 (8th Cir. 2019). Similarly, the City's Public Accommodation Ordinance requires counselors to provide medical treatment to people of all genders and sexual orientations.

Appellants' argue that because their counseling involves speech, providing this counseling would require them to express messages with which they disagree, but these counselors are providing treatment –

professional conduct – even if that treatment incidentally involves speech. *NIFLA*, 585 U.S. at 768. Just as a doctor or nurse could not turn away a patient because of their sexual orientation or gender identity, a Licensed Professional Counselor should not be able to turn away such a patient. The City's Public Accommodation Ordinance does not require Appellants to promote *any* views, let alone one in support of same-sex relationships, or different gender identities; it simply requires the Appellants to provide medical treatment regardless of sexual orientation or gender identity. Nor does the Public Accommodation Ordinance prohibit the Appellants expressing their views that marriage is between one man and one woman. The only thing the Public Accommodation Ordinance requires only that the Appellants cannot refuse to provide medical treatment to a patient based on their protected status.

Appellants are not being compelled to promote or even agree with differing views on gender identities or sexual orientations but are merely prohibited in discriminatorily excluding these individuals when providing their services. Appellants are free to individually promote whatever religious views to which they subscribe. Taking on clients of differing gender identities and sexual orientations does not require Appellants to promote those ideologies or viewpoints of their patients, but to help those individuals with underlying problems, or to treat them as they would any other client. For example, a counselor may counsel an individual struggling with infidelity without endorsing the idea that an affair is morally, socially, or religiously acceptable behavior. Appellants may disaffiliate themselves with the

ideologies or viewpoints of their clients that they find personally objectionable, without discriminatorily refusing to provide them service.

First Amendment protection is offered for "conduct that is inherently expressive." *FAIR II,* 547 U.S. at 66. In *FAIR II*, the Supreme Court held that the Solomon Amendment, which required that military recruiters be given the same rights to speak to students within schools as other employers, regulated "conduct, not speech". *Id.* at 60. Requiring law schools to accommodate and host military speakers within it did not mean they "agree[d] with any speech by recruiters, and nothing in the Solomon Amendment restrict[ed] what the law schools may say about the military's policies." *Id.* at 65. Decades prior, the Supreme Court also upheld a law that required the owner of a shopping mall to allow others to engage in expressive activities on his property. *PruneYard Shopping Center v. Robins*, 447 U.S. 74, 76-77 (1980).

The counseling provided by Appellants is not inherently expressive and does not act as a forum for their personal opinions or thoughts; as shown above, it is conduct – specifically the provision of mental health care. Appellants attempt to illustrate their objection by referring to the example of marriage counseling as an area of their practice where the City's Public Accommodation Ordinance forces them to promote same-sex marriages or relationships. But Merriam Webster generally defines marriage counseling as "help for married couples who have problems in their relationship" and provides the *medical* definition of "counseling for married and unmarried

20

couples to address problems in their relationship."[6] Counseling couples or individuals in any manner is about the problems of those couples or individuals, it does not act as a forum for the counselor to interject their personal opinions or thoughts on the clients or the marriage. Whether or not the counselor believes a couple should be together for the mere fact of their gender or sexual orientation should not impact the counselor's ability to counseling the couple on specific problems within the relationship. Counselors provide treatment to their clients, and presumably are there to listen and to offer assistance, not to promote the counselor's own opinions or ideas.

This is certainly distinguishable from the creation of wedding videos, wedding websites, wedding photographs, or a parade – all of which are "inherently expressive" or artistic endeavors. *See TMG,* 936 F.3d 740; *303 Creative LLC v. Elenis,* 6 F.4th 1160 (10th Cir. 2021); *Emilee Carpenter, LLC*, 107 F.4th 92; *Hurley,* 515 U.S. 557. In each of these cases, the plaintiffs were creating something or doing something in which their own message is being portrayed. For example, if Appellants are counseling a couple who are having problems with infidelity, their counseling should be the same regardless of the gender identity or sexual orientation of the couple. It should require no personal opinions or messaging from Appellants but rather should be about the speech of the client. Their services and treatment act as

---

[6] "Marriage counseling." *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/marriage%20counseling. Accessed 21 Mar. 2025. (emphasis added).

a forum for the speech of others but do not carry their own message. *TMG*, 936 F.3d at 758; *FAIR II*, 547 U.S. at 63.

The Appellants inaccurately contend that the "Publication Clause" restricts their speech. Nowhere does the Ordinance state that they cannot promote or publish their own, individual religious views. Only that they may not publish advertisements for their business that indicates a discriminatory intent to exclude certain classes of persons from receiving services. Essentially, barring a "straights only" advertisement for the Appellants' counseling service. It is presumptuous, and speaks to the Appellants' own views, that they believe merely posting their religious beliefs would "make any person feel unwelcome or objectionable or not acceptable" at their businesses. Nevertheless, Appellants are free to engage in whatever form of personal expression they wish whether that be discussing or publishing their *own* views outside of when they are performing mental health treatment and promoting such treatment, without excluding clients based on their gender identities or sexual orientations.

III. *Appellants did not meet the burden for a preliminary injunction.*

"When deciding whether to grant a preliminary injunction, a district court considers four factors: '(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that the movant will succeed on the merits; and (4) the public interest.'" *CEZ Prior, LLC v. 755 N Prior Ave. LLC*, 126 F.4th 1353, 1358 (8th Cir. 2025) (quoting *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109,

113 (8th Cir. 1981) (en banc)).

Because the Counseling Ordinances regulate conduct, not speech, they should be considered under a rational basis review. *Chiles v. Salazar*, 116 F.4th 1178, 1215 (10th Cir. 2024); (Under this standard, the Counseling Ordinances should be upheld if they are rationally related to a legitimate state purpose. *Doe v. Parson*, 960 F.3d 1115, 1119 (8th Cir. 2020). "[H]ealth and welfare laws [are] entitled to a 'strong presumption of validity'" and "must be sustained if there is a rational basis on which the legislature could have thought that [the law] would serve legitimate state interests." *Dobbs*, 597 U.S. at 301.

While there is no requirement under rational basis review that the basis offered be the true motivating reason of the lawmaking body, *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993), here the City and County both went to great lengths in their legislative actions to show that the harm to minors, in addition to the non-efficaciousness, of conversion therapy, are the true reason for passing the Counseling Ordinances. Both Appellees cited to the established harms to patients exposed to conversion therapy, and to the scores of professional medical organizations that have denounced conversion therapy, noted the inefficacy of conversion therapy, and concluded that the benefits did not outweigh the dangers.

The Supreme Court has recognized that governmental bodies have a substantial interest in protecting the health and safety of minors. *Sable Commc'ns of Cal., Inc. v. FCC*, 492 U.S. 115, 126 (1989) ("We have recognized that there is a compelling interest in protecting the physical and

23

psychological well-being of minors."); *New York v. Ferber*, 458 U.S. 747, 757 (1982) ("A democratic society rests, for its continuance, upon the healthy, well-rounded growth of young people into full maturity as citizens." (internal citation and quotation omitted)).

Following the Civil War, the state's authority to regulate health treatment was "too well settled to require discussion." *Watson v. Maryland*, 218 U.S. 173, 176 (1910) ("There is perhaps no profession more properly open to such regulation than that which embraces the practitioners of medicine."); *see also Collins v. Texas*, 223 U.S. 288, 296-97 (1912) (upholding license requirements for osteopaths who required scientific training to diagnose patients); *Crane v. Johnson*, 242 U.S. 339, 340 (1917) (upholding licensing requirements for "drugless practitioner" who "does not employ either medicine, drugs, or surgery in his practice" but rather "faith, hope, and the processes of mental suggestion and mental adaptation.").

Appellants claim that the Counseling Ordinances are vague and overbroad. The Counseling Ordinances provide that licensed professionals are prohibited from providing therapies attempting to change a minor's sexual orientation. There is nothing vague about this. A counselor is free to discuss various issues and topics with a minor. But the counselor may not attempt to change the minor's sexual orientation, gender identity, or expression. This prohibition is easy to understand; Appellants understand it. They do not object to the Counseling Ordinances because they do not understand what conduct is prohibited. They oppose the Counseling Ordinances because they act to prohibit Appellants from doing what they

want to do, which is to encourage minors to have the sexual orientation and gender expression that Appellants prefer. But, as discussed throughout, nothing in the Constitution provides them with such a right.

The Counseling Ordinances are narrowly tailored to target only harmful therapeutic practices and the Public Accommodation Ordinance is similarly limited to target only discriminatory conduct. The Counseling Ordinances apply to licensed and registered mental health practitioners, and psychiatrists who practice psychotherapy, which is an acceptably narrow area of application. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 564 (2011). The Ordinances apply equally to prevent conversion therapy on cisgender, heterosexual, and LGBTQ minor clients alike, meaning the Counseling Ordinances do not single out "disfavored speech by disfavored speakers." *Sorrell*, 564 U.S. at 565. The Ordinances are not motivated by ideology or the perspective of the mental health practitioner and apply equally to all regulated therapy providers. *Christian Legal Soc. Chapter of the Univ. of Cal., Hastings Coll. of the L. v. Martinez*, 561 U.S. 661, 694 (2010); *see Rosenberger v. Rector and Visitors of the Univ. of Va.*, 515 U.S. 819, 955 (1995).

The Ordinances create professional conduct regulation, a clear category of persons subject to enforcement, a clear prohibition of conduct such that the Appellants and similar professionals are on notice of what therapies would constitute a violation. Thus, the Appellants failed to show that there was a likelihood that they would succeed on the merits of their claims as required for a preliminary injunction. All of these factors

demonstrate that the district court did not abuse its discretion in denying the preliminary injunction, as Appellants cannot meet their burden.

CONCLUSION

The Counseling Ordinances and the Public Accommodation Ordinance are valid exercises of the municipal power of Appellees and the Appellants have failed to meet their  burden for a preliminary injunction. Therefore, the decision of the district court should be affirmed.


Respectfully submitted,

OFFICE OF THE CITY ATTORNEY

By: */s/ Tara M. Kelly*
Tara M. Kelly, #64624

2800 City Hall, 414 E. 12th Street
Kansas City, Missouri 64106
Telephone: (816) 513-3117
Facsimile: (816) 513-3133
Email: tara.kelly@kcmo.org

ATTORNEY FOR APPELLEE CITY OF KANSAS CITY, MISSOURI

OFFICE OF THE COUNTY COUNSELOR

By: */s/ Theresa E. Bullington*
D. Ryan Taylor, #63284
Theresa E. Bullington, #72337

415 E. 12th Street, Suite 200
Kansas City, Missouri 64106
Telephone: (816) 881-3656
Facsimile: (816) 881-3398
Email: rtaylor@jacksongov.org

ATTORNEYS FOR APPELLEE JACKSON COUNTY, MISSOURI

<u>CERTIFICATE OF COMPLIANCE</u>

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed R. App. P. 32(f), this document contains 5782 words as determined by the word count feature of Microsoft Word.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using 14-point Georgia Pro.

Dated: February 2, 2026

*/s/ Tara M. Kelly*
Tara M. Kelly
Attorney for Appellee City of Kansas City, Missouri

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 4, 2026, I electronically filed the foregoing brief with the Clerk of the Court of the United Staes Court of Appeals for the Eight Circuit by using the CM/ECF system, which will accomplish service on counsel for all parties through the Court's electronic filing system.

*/s/ Tara M. Kelly*
Tara M. Kelly
Attorney for Appellee City of Kansas City, Missouri